## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

MARY KING ,                                )
                                           )
              Plaintiff,                    )
                                           )
       v.                                  )        Case No. 05-4235-CV-C-NKL
                                           )
RUSSELL HARDESTY and                       )
COLUMBIA PUBLIC SCHOOL                      )
DISTRICT,                                  )
                                           )
              Defendants.                   )

## ORDER

Before the Court are Plaintiff Mary King's Renewed Motion for Judgment as a Matter

of Law [Doc. # 222] and Motion for New Trial [Doc. # 220].  For the following reasons, the

Court denies Plaintiff's motions.

I.     **Background**

At trial, Plaintiff Mary King claimed that her former employer, Columbia Public

School District ("District") and the Site Administrator at its Bearfield School,  Dr. Russell

Hardesty ("Hardesty") discriminated against her on the basis of her race and retaliated

against her because of her complaints of racial discrimination.  King claimed the District

discriminated against her on the basis of her race by: (1) failing to pay her the salary of a

long-term substitute teacher; (2) dismissing her from her assignment with student H.S. at

1

Bearfield; and (3) denying her homebound instructor assignments.[1] She claimed the District retaliated against her for reporting her claims of discrimination by: (1) failing to pay her the salary of a long-term substitute teacher; (2) dismissing her from her assignment at Bearfield; (3) failing to hire her to fill home school coordinator positions; and (4) denying her opportunities to participate in a fellowship program at Columbia College.

King claimed Hardesty discriminated against her: (1) by dismissing her from her assignment at Bearfield; (2) by denying her opportunity for homebound instructor assignments; and (3) by failing to pay her the salary of a long-term substitute teacher. King claimed Hardesty retaliated against her by (1) dismissing her from her assignment at Bearfield and (2) failing to pay her the salary of a long-term substitute teacher.

After a four day jury trial, a jury returned a verdict for Defendants on each of Plaintiff's claims. Plaintiff now moves the Court for judgment as a matter of law or, in the alternative, a new trial.

## II.    Discussion

### A.    Motion for Judgment As a Matter of Law After Trial

On a motion for judgment as a matter of law, the Court must give "great deference to the jury's verdict." *Heaton v. The Weitz Co., Inc.*, 534 F.3d 882, 889 (8th Cir. 2008) (citation omitted). The nonmoving party receives the benefit of all inferences which can be drawn without resort to speculation. *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d

---

[1]At trial, Plaintiff voluntarily dismissed claims related to Defendants' failure to hire her for substitute teaching positions.

2

901, 908-09 (8th Cir. 2005). Specifically, the court must:

> consider the evidence in the light most favorable to the jury verdict. Specifically, we assume all conflicts in the evidence were resolved in [Defendants'] favor, assume [Defendants] proved all facts that [their] evidence tended to prove, and give [Defendants] the benefit of all favorable inferences that reasonably may be drawn from the proven facts.

*Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1009 (8th Cir. 2008) (citations omitted).

King moves for judgment as a matter of law on: (1) her claims that Defendants Hardesty and Columbia Public School District racially discriminated against her by denying her homebound instructor assignments; (2) her claim that Defendant Columbia Public School District retaliated against her for her complaints of discrimination by failing to hire her for home school communicator positions; and (3) her claims that Defendants Hardesty and Columbia Public School District discriminated against her on the basis of her race by prematurely dismissing her from her assignment with a student at Bearfield School. As to each of these claims, King argues that the evidence was such that no reasonable jury could have found in Defendants' favor.

### 1. Plaintiff's "Same Action" Argument

Plaintiff first argues that she was entitled to judgment as a matter of law on her race discrimination claims because "defendants did not present substantive evidence to prove 'same action.'" Pl.'s Renewed Mot. for Judgment as a Matter of Law, 3. Plaintiff argues that "[w]hen there is no evidence of 'same action,' it compels a finding that race was a motivating factor, because without 'same action', there can be no other reason, other than

race." *Id.* She argues that Defendants had the burden to prove that they would have taken the same employment actions they took regardless of the Plaintiff's race, that they presented no substantive evidence in support of their articulated non-discriminatory reasons for taking those employment actions, and therefore no reasonable jury could have found in Defendants' favor.

In a race discrimination case brought under 42 U.S.C. §§ 1981 or 1983, a plaintiff must show by a preponderance of the evidence: (1) that the defendant took some adverse employment action (i.e., failure to hire, failure to promote, termination, etc); and (2) that the plaintiff's race was a motivating factor in the defendant's action. The defendant prevails if the plaintiff fails to meet its burden as to those two elements, or if the defendant proves by a preponderance of the evidence that it would have taken the same employment action regardless of the plaintiff's race. *See* 8th Cir. Civil Jury Instr. 5.21A; *Desert Palace, Inc. v. Costa*, 539 U.S. 90, (2003) (explaining the shifting burdens of proof in a Title VII case); *Kim v. Nash Finch Co.*, 123 F.3d 1046 (8th Cir. 1997) (explaining that "Title VII and § 1981 set forth parallel, substantially identical, legal theories of recovery in cases alleging intentional discrimination in employment on the basis of race.").

Plaintiff argues that Defendants did not meet their burden of proving by a preponderance of the evidence that they would have taken the same employment actions regardless of the Plaintiff's race, and that, therefore, no reasonable jury could have returned verdicts in Defendants' favor. Plaintiff's argument fails because Plaintiff had the burden to persuade the jury that race was a motivating factor in Defendants' actions before the jury

4

needed to even consider Defendant's "same action" defense. In *Richardson v. Suggs,* 448 F.3d 1046 (8th Cir. 2006), the Eighth Circuit described the burden shifting paradigm in a mixed-motive case as follows:

> To qualify for application of the mixed motive analysis, the plaintiff must "demonstrate that an illegitimate criterion was a motivating factor in the employment decision". Once that has occurred, the employer may come forward with an affirmative defense that it would have made the same decision absent the illegal criterion. "[T]he employer's burden is most appropriately deemed an affirmative defense: the plaintiff must persuade the factfinder on one point, and then the employer, if it wishes to prevail, must persuade it on another."

*Id.* at 1057 (citations omitted).

In this case, the jury was instructed that if it found either that Plaintiff had failed to meet this burden or that Defendants had met their burden of proving "same action," its verdict should be for Defendants. Plaintiff did not object to these instructions which follow:

**Instruction No. 15**

Your verdict must be for Plaintiff Mary King and against Defendant Columbia Public School District on Plaintiff's race discrimination claim if all the following elements have been proved:

*First*, the Columbia Public School District either:

    (a)    Dismissed Plaintiff from her assignment with H.S. at Bearfield School prematurely; or

    (b)    Denied Plaintiff opportunities for homebound instructor assignments; or

    (c)    Did not pay Plaintiff the salary of a long-term substitute teacher at Bearfield School; and

*Second*, the Plaintiff's race was a motivating factor in one or more of the Columbia Public School District's actions listed in paragraph *First*.

The Plaintiff's race was a "motivating factor," if the Plaintiff's race played a part in any actions you found the Columbia Public School District took in paragraph *First*. However, the Plaintiff's race need not have been the only reason for the Columbia Public School District's action or actions.

5

However, your verdict must be for the Columbia Public School District if any of the above elements has not been proved, or if it has been proved that the Columbia Public School District would have taken the actions described in paragraph *First* regardless of Plaintiff's race.

**Instruction No. 17**

Your verdict must be for Plaintiff Mary King and against Defendant Russell Hardesty on Plaintiff's race discrimination claim if all the following elements have been proved:

*First*, Russell Hardesty either:

(a) Dismissed Plaintiff from her assignment with H.S. at Bearfield School prematurely; or

(b) Denied Plaintiff opportunities for homebound instructor assignments; or

(c) Did not pay Plaintiff the salary of a long-term substitute teacher at Bearfield School; and

*Second*, the Plaintiff's race was a motivating factor in one or more of Russell Hardesty's actions listed in paragraph *First*; and

The Plaintiff's race was a "motivating factor," if the Plaintiff's race played a part in any actions you found Russell Hardesty took in paragraph *First*. However, the Plaintiff's race need not have been the only reason for Russell Hardesty's action or actions.

However, your verdict must be for Russell Hardesty if any of the above elements has not been proved, or if it has been proved that Russell Hardesty would have taken the actions described in paragraph *First* regardless of Plaintiff's race.

Thus, while evidence that Defendants would have taken the "same actions" regardless of Plaintiff's race is sufficient to sustain a defense verdict, it is not necessary for a defense verdict; the jury was free to find for Defendants if it found that Plaintiff King had not met her burden of proving that race was a "motivating factor" for Defendants' actions. As set out more fully below, there was sufficient evidence for a reasonable jury to conclude that Plaintiff had not met her burden of proof with respect to each of her race discrimination claims.

6

Further, the "same action" argument is inapplicable to Plaintiff's motion with respect to her claim that Defendant Columbia Public School District has failed to hire her for home school communicator positions in retaliation for her complaints of race discrimination. With respect to this and Plaintiff's other retaliation claims, the jury was instructed that Plaintiff had the sole burden to prove that her complaints of race discrimination were a "determining factor" in Defendants' employment decisions. These instructions did not mention "same action", and the Plaintiff did not object to them. As set out below, there was sufficient evidence for a reasonable jury to conclude the Plaintiff had not met her burden to show that her complaints of race discrimination were a determining factor in the Columbia School District's decision not to hire her for home school communicator positions.[2]

## 2. Plaintiff's Race Discrimination Claims

Plaintiff argues that she is entitled to judgment as a matter of law with respect to her claims that Defendants Hardesty and the Columbia Public School District discriminated against her on the basis of her race in denying her homebound instructor assignments and her claim related to the termination of her assignment at Bearfield School. She argues that her

---

[2] It may be that Plaintiff is arguing that when there is not a good reason for an employment decision or an employer is not truthful about the reason for the employment decision, a jury could infer that race was the motivating factor. If that is Plaintiff's argument, it has nothing to do with the "same decision" analysis addressed in mixed-motive cases. Further, this argument fails because an employer might have many reasons, other than race, for being untruthful about their motivations. Finally, even if a lack of candor could justify a judgment in favor of the Plaintiff, it certainly does not *require* a judgment in favor of the Plaintiff. Therefore, judgment as a matter of law in favor of Plaintiff would not be proper.

Case 2:05-cv-04235-NKL   Document 229   Filed 04/20/09   Page 7 of 24

evidence disproved Defendants' articulated reasons for taking these actions, and therefore a reasonable jury could only have inferred that race was the real reason.

A reasonable jury could have found that the Defendants made their decisions without regard to race. Plaintiff did present some evidence of the Defendants' alleged racial animus. She testified that Dr. Hardesty had used racially derogatory language to her and in her presence and had treated her differently than white Columbia School District employees at Bearfield. She also testified that she saw him treat other African- America employees differently. Plaintiff testified that she complained to Dr. Hardesty and to several District officials about this mistreatment but that no action was taken by any of them. Plaintiff presented evidence that another African-American employee at Bearfield, Louis Gatewood, had complained that he was not being assigned homebound assignments because of race discrimination. Finally, Plaintiff presented evidence that pursuant to District policy, an investigation should have been undertaken when complaints of race discrimination were made, but no such investigation was undertaken regarding Plaintiff's complaints. Plaintiff argues that District officials' failure to comply with the District's policy was evidence of racial animus.

Defendants also presented evidence at trial. With respect to Plaintiff's claims that Dr. Hardesty had used racially derogatory language to King and in her presence or mistreated African-Americans in her presence, Dr. Hardesty testified he had never made the alleged statements or done the things he was accused of. He also said that she had never complained to him about such statements or about racial discrimination at Bearfield. Defendants also

8

called several other witnesses, including Cynthia Ryan-Thompson, Mark Consiglio, Richard Kuster, and Ruth Stamper, who testified they had never heard Dr. Hardesty use such language or do the things he was accused of.[3]  Defendants presented evidence that Louis Gatewood, an African American, was given homebound assignments.  With respect to Plaintiff's evidence regarding District employees' inaction in the face of her complaints of race discrimination, the District's witnesses, including Dr. Laffey, Dr. Cowherd and Dr. Hardesty, testified that they had heard no complaints of race discrimination from Ms. King until after she filed her lawsuit in 2005.

A reasonable jury could have believed this evidence and disbelieved Plaintiff's evidence.  If the jury believed Defendants' witnesses rather than Plaintiff then the jury could reasonably find that neither race nor retaliation was a motivating or determining factor in the Defendants' employment decisions.

Plaintiff, however,  argues that her evidence disproved Defendants' only articulated reasons for failing to provide her homebound instructor assignments and therefore the jury was required to find that race was the real reason for their actions.  She argues that Defendants' only articulated reasons for not providing those assignments to her were: (1) the District's preference of selecting a student's classroom teacher if available or another staff member at a student's school; and (2) that Plaintiff had not applied as required for homebound assignments.  Plaintiff argues that her evidence refuted Defendants' articulated

---

[3]According to Plaintiff, some of these people were present when Hardesty's statements were allegedly made.

reasons as a matter of law. Plaintiff offered evidence that some individuals who received homebound assignments were neither a student's classroom teacher nor a staff member at the student's school. Plaintiff also provided evidence that she submitted a substitute teaching application in the 2001-2002 school year and that this application was sufficient to qualify a person for homebound assignments at that time. Defendants presented testimony from District employees that students' classroom teachers were preferred for homebound assignments, and that if the teacher was not available, another staff member from a student's school was preferred. Defendants presented testimony that the District preferred to assign fully certificated teachers with bachelor's degrees in education for homebound assignments, and that Ms. King was not such a person. Defendants also provided evidence that all homebound instruction assignments out of Bearfield during the 2001-2002 school year were given to African-American employees, and that other African-American staff members received homebound instruction assignments. Defendants presented evidence that Ms. King was assigned two homebound instruction assignments during the 2001-2002 school year. Finally, Defendants presented evidence that from the 2002-2003 school year on, individuals who wished to receive homebound instruction assignments were required to fill out a homebound teaching application, and that Ms. King was sent a letter informing her of this new requirement but failed to submit an application. Given all the evidence, a reasonable jury was not required to find that race or retaliation was the motivating or determining reason for the Districts' actions. This is so even if the jury found that the Defendants

10

violated some of their own policies, because, as discussed below, there could be many reasons, other than race, for not following policies.

Next, Plaintiff argues that she disproved Defendants' articulated reason for ending Plaintiff's assignment at Bearfield School. Plaintiff notes that Defendants' articulated reason for ending the assignment was that Plaintiff had been assigned to work one-on-one with a particular student - H.S. - and that this assignment necessarily ended when that student was transitioned into a regular classroom on December 7, 2001, pursuant to the student's individualized education program (IEP). Plaintiff argues that the evidence at trial was that H.S. was transitioned to another classroom during the winter break, and that the winter break did not occur until December 24, 2001 to January 3, 2002, and that this evidence established that there was no transition at the time Defendants claimed. Further, Plaintiff argues that Cynthia Ryan-Thompson, the teacher into whose classroom H.S. was placed when Plaintiff's assignment ended, testified that H.S. did not leave Bearfield until the Fall of 2002 when he returned to his regular school.

Defendant Hardesty and Ms. Ryan both testified that H.S. was ready to be transitioned into Ms. Ryan's classroom on December 7, 2001, and that the transition occurred on that date pursuant to the student's IEP. The transition involved HS going to Ms. Ryan's classroom accompanied by King. There was evidence that he started going to Ms. Ryan's classroom with King before the winter break. Further, even if there was confusion about the exact date when the transition occurred, this does not disprove as a matter of law the District's reason for moving HS. Ms. King testified that she was aware that the goal was to transition H.S.

11

into a regular classroom, and that she attended IEP meetings at which that goal was discussed by District employees and H.S.'s parents. Plaintiff presented no evidence other than her own conclusory statements that H.S. was not ready to be transitioned into Ms. Ryan-Thompson's classroom on December 7, 2001. Most importantly, the IEP committee made the decision to transition H.S. and there is no evidence that the IEP committee was dominated by any person alleged to have harbored racial animus towards the Plaintiff. Based upon this evidence, a reasonable jury could find in favor of the Defendants on Plaintiff's race discrimination claims.

### 3. Plaintiff's Home School Communicator Retaliation Claim

Plaintiff argues that she was entitled to judgment as a matter of law with respect to her claim that the Columbia Public School District retaliated against her for her complaints of race discrimination by failing to hire her for home school communicator positions because she effectively disproved the District's articulated reason for not hiring her for these positions. Plaintiff's argument again ignores the fact that Plaintiff, and not Defendant, had the burden to show that retaliation for complaints of race discrimination was a determining factor in Defendant's decision not to hire Plaintiff. Regardless, the evidence at trial was sufficient for a reasonable jury to conclude that retaliation was not a determining factor. First, while Plaintiff testified to a statement by Beulah Ralph, the District's Director of Home School Communicators, that Dr. Laffey would never hire Ms. King for a permanent position with the District because of Ms. King's "speaking out" against the District, the Plaintiff's

12

assertion was the only evidence at trial that such a statement was ever made. [4] If the jury did not think Ms. King was a credible witness, it was not required to believe such a statement was ever made. Second, Defendant presented evidence that District officials were not even aware of Ms. King's complaints of discrimination until she filed her lawsuit in 2005, such that they could not have based employment decisions on Ms. King's complaints. There was sufficient evidence for a reasonable jury to conclude that retaliation was not a determining factor in the District's decision not to hire Plaintiff for home school communicator positions.

### 4. Conclusion

Considering the entire record in the light most favorable to the jury's verdict, a reasonable jury could have found for Defendants, just as the jury did in this case. Plaintiff's motion for judgment as a matter of law after trial must therefore be denied.

### B. Plaintiff's Motion for New Trial

A new trial is appropriate if a miscarriage of justice has occurred because the verdict is against the weight of the evidence, the damage award is excessive, or legal errors occurred during the trial. *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "A motion for a new trial based on erroneous [evidentiary rulings] should not be granted unless the evidentiary ruling[s] [were] so prejudicial that a new trial would likely produce a different outcome." *Radloff v. City of Oelwein, Iowa*, 380 F.3d 344, 349 (8th Cir. 2004) (citation omitted). "On a motion for new trial, the district court is entitled to interpret the evidence and judge the

---

[4]The parties explained that Ms. Ralph was not able to testify at trial because of competency issues.

13

credibility of witnesses, but it may not usurp the role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable." *Van Steenburgh v. Rival Co.*, 171 F.3d 1155, 1161 (8th Cir. 1999) (citation omitted).

A movant may not use a motion for a new trial "to introduce new evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to entry of judgment." *Parton v. White*, 203 F.3d 552 (8th Cir. 2000) (citation omitted). The movant must "specifically identify the alleged erroneous ruling and the improperly excluded evidence." *Moses.com Sec. Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1059 (8th Cir. 2005) (citations and internal quotations omitted).

### 1. Verdict Against the Weight of the Evidence

Plaintiff first argues she is entitled to a new trial because the jury's verdict was so against the weight of the evidence that a miscarriage of justice occurred, citing her arguments in support of judgment as a matter of law. For the same reasons the Court denies Plaintiff's motion for judgment as a matter of law, the Court finds that the jury's verdict was not against the weight of the evidence. Indeed, there was very significant evidence in favor of Defendants, and Ms. King's testimony was not persuasive. Although Plaintiff complains about the amount of time it took the jury to return a verdict, a quick decision was not surprising, given the totality of the evidence. Plaintiff's motion for a new trial on this ground must be denied.

### 2. Legal Errors at Trial

14

Plaintiff next points to several alleged legal errors at trial. Specifically, she argues the Court: (a) improperly excluded evidence of complaints of discrimination made by other Bearfield employees; (b) improperly initially excluded Plaintiff's Exhibit 57; (c) improperly admitted photographs of Bearfield students; (d) improperly allowed certain witnesses who were not disclosed during discovery to testify at trial; (e) improperly allowed testimony about undisclosed nondiscriminatory reasons for Defendants' employment actions that Defendants had an obligation to disclose during discovery; (f) improperly directed a verdict on Plaintiff's claim of retaliation against the District with respect to Plaintiff's claim for denial of fellowship opportunities; and (g) failed to give Plaintiff's attorney sufficient latitude to describe to the jury the meaning of "motivating factor" as used in the Court's instructions.

### a. Plaintiff's Evidence of Other Complaints of Discrimination by Bearfield Employees

Plaintiff contends that the Court erred by excluding evidence of race discrimination complaints by Louis Gatewood and Hope Quaintance – former African-American employees at Bearfield. The Court excluded evidence of these statements as hearsay because neither Quaintance nor Gatewood were called to testify and Plaintiff did not establish a hearsay exception.[5] While Plaintiff argued that the testimony was not to show that the discrimination allegations were true, but just to show that other African-Americans had complained in order

---

[5]During the trial, Plaintiff was able to introduce evidence that Louis Gatewood complained that he was not receiving homebound assignments due to race discrimination, and that Mr. Gatewood complained about that alleged discrimination, after Defendants opened the door by introducing evidence that Mr. Gatewood received some homebound instructor assignments.

Case 2:05-cv-04235-NKL   Document 229   Filed 04/20/09   Page 15 of 24

to show the racial animus of the Districts' employees, the Court concluded that the probative value of the evidence was outweighed by its prejudicial impact.

The Court refused to admit the evidence after conducting an analysis under Federal Rule of Evidence 403. The evidence that other complaints were allegedly not investigated was of small probative value in comparison to the likely misuse of the evidence by the jury. This was not a hostile work environment case where notice to an employer would be central. Further, there are any number of reasons District officials might not act in accordance with District policy including, as Plaintiff's attorney pointed out in arguing this issue at trial - the officials' negligence. In contrast, there was a danger of significant unfair prejudice to Defendants if Plaintiff could use this back door to get in evidence that other African-Americans believed they were being discriminated against even though those African Americans were not available for cross examination at trial. For example, when the Court made its ruling at trial that evidence of these complaints was inadmissible for this purpose under Rule 403, Plaintiff made an offer of proof. In that offer of proof, Plaintiff's counsel asked the witness about Plaintiff's Exhibit 284, and about the allegation therein that Dr. Hardesty had made racial slurs to Ms. Quaintance. There is no doubt in the Court's mind that this evidence would have been considered by the jury to evaluate the credibility of Dr. Hardesty on the question of whether he made racial slurs far more than to consider whether the District followed its policies. Had Quaintance and Gatewood been called by the Plaintiff to testify, there would have been no problem with the evidence. But Plaintiff cannot

16

introduce the substance of these other complaints while insulating Quaintance and Gatewood from cross examination about their allegations.

Plaintiff cites *Philipp v. ANR Freight*, 61 F.3d 669, 676 (8th Cir. 1995) for the proposition that hearsay evidence of other complaints of discrimination is admissible in a discrimination case. *See* Pl.'s Mot. for New Trial, 7. In *Philipp*, the District Court had previously entered a judgment on a jury verdict for the defendant after refusing to allow into evidence other discrimination cases against the defendant on relevance grounds. *Philipp*, 61 F.3d at 672. The Eighth Circuit Court of Appeals reversed, and on retrial plaintiff prevailed. *Id.* The Court of Appeals upheld the District Court's decision to admit into evidence a list of discrimination complaints that had been made against the defendant, finding that even if the District Court had failed to adequately consider hearsay issues with respect to the complaints of discrimination, there was no reversible error because the jury was given a carefully worded cautionary instruction. *Id.* at 676–67. The Court of Appeals did not hold in *Philipp* that hearsay evidence is admissible in cases of race discrimination; it merely held that in the context of that case, admission of such evidence did not result in "manifest injustice" to the defendant. *Id.* at 676. The Court did not err in refusing to admit this evidence; Plaintiff is not entitled to a new trial based upon this evidentiary ruling.

### b. Plaintiff's Exhibit 57 - King's Written Complaint of Discrimination

Next, Plaintiff argues the Court erred in initially refusing to admit Plaintiff's Exhibit 57, a letter Ms. King wrote to Ms. Pauley in which Ms. King stated she felt the District had

17

discriminated against her on the basis of her race by not providing her with substitute teaching assignments. The Court's initial ruling was based on the fact that Ms. King had voluntarily dismissed her claims related to substitute teaching assignments. The Complaint of race discrimination in the letter was limited to substitute teaching assignments which were no longer at issue in the case; the letter was not relevant.

Further, even if the Court's initial ruling had been in error, Plaintiff fails to show that she was prejudiced. The Court admitted Plaintiff's Exhibit 57 into evidence after Defendant Hardesty's attorney opened the door through a question to Bobbie Pauley. The jury was able to consider Plaintiff's Exhibit 57 along with Plaintiff's testimony that she complained to District officials. The Court's initial exclusion of this exhibit was not in error, and even if it had been Plaintiff was not prejudiced.

### c. Photographs of Bearfield Students - Defendants' Exhibits 75–78, 81, 82, and 87–89.

Next, Plaintiff argues that it was error for the Court to admit Defendants' Exhibits 75-78, 81, 82, and 87–89, all photographs of Bearfield students, many of them African-American, engaged in school activities or on field trips to Defendant Hardesty's farm. Plaintiff argues these photographs and any testimony about them is irrelevant and should have been excluded. While Plaintiff objected to the photographs at the pre-trial conference, Plaintiff's counsel stated at trial that Plaintiff would withdraw her objection, and then did not object to the photographs' admission into evidence. Regardless, the photographs were relevant. Plaintiff testified that Dr. Hardesty made numerous racist comments regarding his

18

African-American students. Defendants offered the photographs as evidence rebutting Plaintiff's suggestion that Dr. Hardesty harbored a negative attitude toward African-American students, disabled students or African-Americans generally. The Court's admission of these exhibits, without objection by Plaintiff, was not in error.

### d. Undisclosed Witnesses

Next, Plaintiff argues that the Court erred in allowing Defendants to call witnesses who she alleges were not disclosed pursuant to Federal Rule of Civil Procedure 26 or in Defendants' answers to particular interrogatories propounded by Plaintiff, resulting in a "trial by ambush," and that these witnesses should have been excluded pursuant to Federal Rule of Civil Procedure 37(c). Specifically, Plaintiff argues that Cynthia Ryan-Thompson, Richard Kuster, and Mark Consiglio should not have been allowed to testify at trial. Plaintiff's claims of trial by ambush are without merit. Cynthia Ryan-Thompson was disclosed as a witness in Defendants' pre-trial memorandum filed in 2006, more than two years prior to trial. In addition, Defendants disclosed all three of these witnesses in the parties' joint pre-trial memorandum filed prior to trial. Furthermore, Plaintiff also listed Mr. Consiglio as a witness, did not make an objection at trial that Mr. Consiglio had not been disclosed, and Plaintiff's counsel designated portions of Mr. Consiglio's deposition. As to Mr. Kuster, although Plaintiff knew that Mr. Kuster would be called as a witness at least since the parties filed their pre-trial memorandum, Plaintiff never objected to Mr. Kuster testifying until the day Defendant called him as a witness. Furthermore, Plaintiff was clearly

aware of Mr. Kuster; his name appeared several times in Plaintiff's own exhibits. Plaintiff was not prejudiced by Defendants' failure to disclose Mr. Kuster earlier.

Plaintiff also argues that Defendants elicited irrelevant testimony from these witnesses, and that these witnesses engaged in improper vouching. Plaintiff argues that Mr. Kuster's testimony was irrelevant, because he was not employed by the District until spring of 2003. However, Plaintiff's claims against Defendants extend beyond this time period. Plaintiff has failed to explain how Kuster's testimony is irrelevant. Further, none of these witnesses vouched for Dr. Hardesty's credibility, as Plaintiff claims, and Plaintiff did not even object at trial to the testimony of Ms. Ryan-Thompson of which she now complains. Plaintiff was not subject to a "trial by ambush," and did not suffer prejudice from these alleged nondisclosures.

### e.     Allegedly Undisclosed Defenses and Testimony

Next, Plaintiff claims that the Court erred in permitting Defendants to elicit testimony about defenses to Plaintiff's claims that Defendants allegedly did not disclose to Plaintiff prior to trial. With respect to her home school communicator claim, Plaintiff argues that Defendants never disclosed to Plaintiff that she was not hired for these positions because of complaints about Plaintiff as a substitute teacher. She claims that she voluntarily dismissed her substitute teacher claim, and that the exclusions were only relevant to that claim. However, Plaintiff was aware at least since summary judgment briefing in 2006 that Defendants were claiming that Plaintiff's exclusions from substitute teaching at seven schools was a reason Plaintiff had not been hired for at least one home school communicator

position - the position at Lange Middle School.  Although the Lange Middle School home school communicator claim was no longer in the case, Plaintiff and Plaintiff's counsel were aware of the other exclusions and that Defendants had claimed that those exclusions were reasons Plaintiff was not selected for other teaching positions. The District also mentioned the seven exclusions in responding to Plaintiff's interrogatory seeking facts supporting the District's defenses.  *See* Pl.'s Mot. for New Trial, Exhibit 4, 2.  Plaintiff was not prejudiced by evidence of this "new" defense.

With respect to Plaintiff's claim that Defendants discriminated against her by failing to provide her homebound instructor assignments, Plaintiff argues the Court erred in admitting Defendants' Exhibit 48k, a letter informing prior participants in the homebound instructor program that they would need to submit a new application to be considered for homebound assignments in the future.  Plaintiff claims the letter was irrelevant as there was no evidence that she ever received it, and that Defendants had failed to disclose to Plaintiff that such a letter had ever been sent.  The Court initially refused to admit Exhibit 48k because counsel for the District initially had no evidence that the letter had been sent to Plaintiff.  However, later in the trial, the District laid a sufficient foundation for the letter's admission through testimony that the letter had been sent to persons on a list of people who had been paid for homebound instructor assignments in the past and that Ms. King's name appeared on that list. While Plaintiff complains that Defendants did not disclose during discovery that this letter was sent to persons who had been paid for homebound instructor assignments in prior years, Plaintiff received the letter in September of 2006, more than two

years prior to trial, and Plaintiff did not object at trial to this testimony or to the admission of the letter itself into evidence. The Court did not err in admitting this evidence, and exclusion under Federal Rule of Civil Procedure 37(c) was inappropriate because Defendant District was substantially justified in not disclosing this evidence before it did; Defense counsel represented to the Court at trial that he had only just learned the circumstances under which the letters were sent out.

### f.    Plaintiff's Claim for Denial of Fellowship Opportunities

Next, Plaintiff argues that the Court erred in dismissing her claim for retaliation against the District for denial of fellowship opportunities. Plaintiff claims that she testified as to a fellowship opportunity available to her at Columbia College, and that her uncorroborated testimony was sufficient for her claim to be submitted to the jury. Pl.'s Mot. for New Trial, 15 (citing *Kenney v. Swift Transp.*, 347 F.3d 1041 (8th Cir. 2003)). Plaintiff also claims that Dr. Laffey's articulated reason for not selecting Plaintiff for such opportunities was not disclosed prior to trial.[6] As an initial matter, Plaintiff did not object to the Court's jury instructions, which did not include this claim, so Plaintiff has failed to preserve this argument.

However, even if Plaintiff had objected, no reasonable jury could have found for Plaintiff on this claim. Plaintiff testified that there was a fellowship program at either Columbia College or the University of Missouri which would allow the Plaintiff to obtain

---

[6]Although Plaintiff makes this argument in her motion, she does not state which articulated reasons were undisclosed.

a Master's in Education and become a fully certified teacher while working for the Columbia Public School District. Plaintiff testified that individuals at both Columbia College and the University of Missouri informed her that to be eligible for the program Plaintiff needed a contract with the District or a promise that the District would hire her, and that Dr. Laffey refused to hire her for any permanent or teaching position. On cross examination, Ms. King said that the program did not require a bachelor's degree in education. Plaintiff offered no other evidence regarding the fellowship program.

Dr. Laffey testified that the fellowship program was offered only through the University of Missouri, and that it was only available to individuals graduating with a four year college degree in the field of education. According to Dr. Laffey, the program was designed so that these individuals could teach for the District for a year while they completed a one year Master's Degree in Education with the University of Missouri. She testified that the University of Missouri had taken a couple of individuals with temporary certification and with degrees in fields other than education degrees for a time in 2002-2003, but that this had been unsuccessful for the University and was discontinued.

Even assuming Plaintiff's characterization of the program was true, Plaintiff presented no evidence that she would have been accepted into the fellowship program if the District had offered her a full-time position. According to Plaintiff, what Dr. Laffey and the District really denied her was the full-time position that she needed in order to qualify for the fellowship program, not the fellowship itself. The Court did not err in failing to instruct the jury on this claim.

### g.    Plaintiff's Closing Argument

Finally, Plaintiff argues that the Court erred in sustaining Defendants' objection to Plaintiff's description of "motivating factor" during Plaintiff's counsel's closing argument. As Defendant explained, Plaintiff's counsel "raised her right hand and separated her index finger from her thumb about half an inch," clearly intending to indicate that race need only have played a very small role in order to have been a motivating factor in Defendants' employment actions. The Court sustained Defendants' objection to this argument because the Court's instructions spoke for themselves and more accurately defined "motivating factor." The Court's decision to sustain Defendants' objection was not error.

## III.    Conclusion

Accordingly, it is hereby ORDERED that Plaintiff's Renewed Motion for Judgment as a Matter of Law [Doc. # 222] and Motion for New Trial [Doc. # 220] are DENIED.


s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: April 20, 2009
Jefferson City, Missouri